# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**ADKINS ENERGY, INC., et al.**,

    Plaintiffs,

v.                                             Civil Action No. 5:16-cv-151
                                                (BAILEY)

**DOMINION TRANSMISSION INC., et al.**,

    Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

Pending before this Court is the Plaintiffs' Motion to Remand [Doc. 9],[1] which was filed on October 24, 2016. Defendants filed their response [Doc. 30] on December 2, 2016. Plaintiffs replied on December 16, 2016 [Doc. 36]. The Motion is ripe for disposition. For the reasons that follow, the Plaintiffs' Motion to Remand [Doc. 9] is **GRANTED**.

## Background and Procedural History

This case was originally filed in the Circuit Court of Marshall County, West Virginia [Doc. 1]. The plaintiffs are independent producers of natural gas in West Virginia, who allege defendants forced into long-term, ten-year, fixed-price contracts. [Doc. 1-1 at ¶ 1]. Defendant Dominion Transmission, Inc. ("DTI") is a natural gas transmission company,

---

[1] Also pending is the Motion to Dismiss of Defendant Riley Natural Gas Company [Doc. 15]; Defendants Dominion Field Services, Inc. and Joseph Vanzant's Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 17]; and Defendant Dominion Transmission, Inc. and Dominion Resources, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 19]. This Court must first necessarily address the issue of its jurisdiciton.

1

which, plaintiffs allege, in unlawful coordination with its affiliate, defendant Dominion Field Services, Inc. ("DFS"), and defendant Riley Natural Gas Company ("Riley"), forced unconscionable contracts on the various independent natural gas producing plaintiffs. (Id. at ¶¶ 2-4).

Plaintiffs allege DTI and DFS conspired to present DFS as a separate and independent entity, and in so doing, DFS assumed fiduciary duties to plaintiffs. (Id. at ¶ 6). DFS allegedly promoted itself to plaintiffs as an expert in gas marketing and shipping and presented as an investment opportunity reserved space on a new pipeline known as the Gateway Project. (Id. at ¶¶ 3, 6, 7). Plaintiffs allege DFS and Riley represented that only those producers that signed 10-year "firm transportation" contracts would be able to transport their gas using the Gateway Project. (Id. at ¶¶ 8-9). Through the negotiation process, plaintiffs allege, *inter alia*, that DFS obtained their confidential business information and projections for future gas production, which defendants used to their advantage, knowing plaintiffs had no alternatives, and threatened that refusal to sign the contracts would result in them being "shut in." (Id. at ¶¶ 10-12, 22).

Plaintiffs allege they were further subject to unreasonably short deadlines in which to make their decision, that numerous misrepresentations were made upon which plaintiffs relied, that they were required to pay a fixed fee every month to ship gas regardless of whether any was actually produced, and that their gas was often times not shipped on the Gateway Project to the contracted location. (Id. at ¶¶ 12-15, 18). Plaintiffs' position asserts that they are challenging these adhesion contracts and the defendants' alleged tortious conduct in securing them and performing on them exclusively under state law principles.

Plaintiffs' First Amended Complaint thus asserts the following causes of action:

Count I - Breach of Fiduciary Duty; Count II - Aiding and Abetting Breach of Fiduciary Duty; Count III - Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing Under the Common Law and/or the Uniform Commercial Code; Count IV - Fraud; Count V - Breach of Joint Venture; Count VI - Unjust Enrichment; Count VII - Unconscionability/Rescission Under the Common Law and/or the Uniform Commercial Code; Count VIII - Fraudulent Inducement; Count IX - Declaratory Judgment of Force Majeure; Count X - Acts Constituting Civil Conspiracies; Count XI - Negligence; Count XII - Negligent Misrepresentation; and Count XIII - Violation of W.Va. Code § 46A-6-101 *et seq*. (Id. at 1). As relief, plaintiffs pray for judgment against the defendants for compensatory damages, various injunctive and declaratory relief, and punitive damages. (Id. at pp. 47-48).

On September 23, 2016, defendants Dominion Transmission Inc. and Dominion Resources, Inc., with the consent of their co-defendants, removed this case to this Court asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446 [Doc. 1]. Specifically, the defendants assert this action falls within the jurisdictional provision of the Natural Gas Act ("NGA"), 15 U.S.C. § 717w, *et seq*. (Id.). The plaintiffs timely filed the pending Motion to Remand [Doc. 9].

## Standard of Review

"We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate

3

the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." **Strawn v. AT & T Mobility**, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' **Md. Stadium Auth. v. Ellerbe Becket Inc.**, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); see also **Shamrock Oil** [**& Gas Co. v. Sheets**], 313 U.S. at 109 ('Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (internal quotation marks omitted))." **Palisades Collections LLC v. Shorts**, 552 F.3d 327, 333-34 (4th Cir. 2008).

As this Court has previously noted, "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction," and thus remanding a case to state court. **Vitatoe v. Mylan Pharmaceuticals, Inc.**, 2008 WL 3540462, at *2 (N.D.W. Va. Aug. 13, 2008)(Keeley, J.) (citing **Hartley v. CSX Transp., Inc.**, 187 F.3d 422, 425 (4th Cir. 1999)). Finally, when considering a motion to remand, the Court is limited to considering the record at the time of removal. See **Lowrey v. Ala. Power Co.**, 483 F.3d 1184, 1213-15 (11th Cir. 2007).

## Applicable Law

When an action is removed from state court, a federal district court is required to first

4

determine whether it has original jurisdiction over the plaintiffs' claims. District courts have original jurisdiction to hear cases involving a federal question, those cases that "arise under" federal law or the Constitution. 28 U.S.C. § 1331. The clearest cases are those where federal law creates the cause of action asserted. **Am. Well Works Co. v. Layne & Bowler Co.**, 241 U.S. 257, 260 (1916). Pursuant to the well-pleaded complaint rule, a case "arise[s] under" federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." **Caterpillar Inc. v. Williams**, 482 U.S. 386, 392 (1987). The existence of a federal defense is therefore not typically sufficient to establish federal question jurisdiction. *Id*. at 398.

Most relevant to the instant jurisdictional inquiry, in a limited number of circumstances, state-law claims may be sufficient to establish federal question jurisdiction. "Where state law creates the cause of action, federal-question jurisdiction will nonetheless lie if the 'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" **Columbia Gas Transmission Corp. v. Drain**, 191 F.3d 552, 557 (4th Cir. 1999) (quoting **Franchise Tax Bd. v. Constr. Laborers Vacation Trust**, 463 U.S. 1, 27-28 (1983)). However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." **Merrell Dow Pharm. Inc. v. Thompson**, 478 U.S. 804, 813 (1986).

Importantly, district courts must inquire whether "a state-law claim necessarily raise[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibility." **Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.**, 545

U.S. 308, 314 (2005). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." **Gunn v. Minton**, 133 S.Ct. 1059, 1065 (2013). This is a "special and small category" of cases. **Empire Healthchoice Assurance, Inc. v. McVeigh**, 547 U.S. 677, 699 (2006). The Supreme Court of the United States has distinguished cases that involve "nearly 'pure issue[s] of law' . . . 'that [can] be settled once and for all'" from those that are "fact-bound and situation specific." *Id*. at 700-01. Or, as Justice Cardozo put it, a "common-sense accommodation of judgment to [the] kaleidoscopic situations" that present a federal issue, in "a selective process which picks the substantial causes out of the web and lays the other ones aside." **Gully v. First Nat. Bank in Meridian**, 299 U.S. 109, 117-18 (1936).

## Discussion

As an initial matter, the defendants wholly fail to fit their arguments into the four **Grable** factors. Nevertheless, defendants cast their conclusory assertions that there exist substantial questions of federal law on which plaintiffs' state-law claims necessarily depend by attempting to establish such nexus by emphasizing that DTI is an interstate natural-gas pipeline company that is governed by the Natural Gas Act ("NGA") and regulated by the Federal Energy Regulatory Commission ("FERC"). [Doc. 30]. Defendants assert Federal law governs DTI's conduct in developing the Gateway Project, its contracts for transportation capacity on it, and its relationship with its marketing affiliate, DFS. (Id.). Thus, defendants attempt to manufacture federal jurisdiction by intertwining their FERC and

6

NGA obligations in constructing and maintaining the Gateway Project with the plaintiffs' contracts to use the same. This Court is not persuaded.

"***Merrell Dow*** should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires. The absence of any federal cause of action affected ***Merrell Dow***'s result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." ***Grable***, 545 U.S. at 318.

"When a removing party seeks to invoke the court's 'arising under' jurisdiction, 28 U.S.C. § 1331, the federal question typically must be evident from the face of the plaintiff's well-pleaded complaint." ***Eller v. Jackson Kelly PLLC***, 2011 WL 672054, *4 (S.D. W.Va. Feb. 14, 2011) (citing ***Franchise Tax Bd. v. Constr. Laborers Vacation Trust***, 463 U.S. 1, 10 (1983); ***Custer v. Sweeney***, 89 F.3d 1156, 1165 (4th Cir. 1996)). However, "[e]ven

7

if state law creates the claims asserted by the plaintiff, federal question jurisdiction nonetheless is proper in cases in which 'the plaintiff's right to relief *necessarily depends* on resolution of a *substantial question* of federal law, in that the federal law is a necessary element of one of the well-pleaded . . . claims.'" *Id*. (quoting **Pinney v. Nokia, Inc.**, 402 F.3d 430, 442 (4th Cir. 2005) (emphasis added). Thus, "[i]n order to remove a case in which state law creates the plaintiff's cause of action, a defendant 'must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial.'" *Id*. (quoting **Dixon v. Coburg Dairy, Inc.**, 369 F.3d 811, 816 (4th Cir. 2004)); *see also* **Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.**, 545 U.S. 308, 314 (2005) ("[D]oes the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]"). As a final guide, "[t]he Fourth Circuit has stated that it is a 'small class of cases' where state law creates a plaintiff's claim, but federal jurisdiction is nonetheless proper." *Id*. at *7 (quoting **Pinney**, 402 F.3d at 442).

For instance, defendants assert that any inquiry into the defendants' alleged conspiracy to deprive plaintiffs of "reasonable access to transportation of their natural gas," would require a court to determine "whether" DTI complied with federal regulations. [Doc. 30 at p. 8]. Such inquiry, however, would not require the court to *construe* the regulations in any substantial way. Similarly, defendants argue that any duty owed in plaintiffs' state-law negligence claim would require interpretation of the FERC license. (Id. at p. 9). Any such duty, however, would be determined under West Virginia law.

8

In *Eller v. Jackson Kelly PLLC*, 2011 WL 672054, *9 (S.D. W.Va. Feb. 14, 2011), the Honorable Thomas E. Johnston rejected a similar argument that a *prima facie* case of fraudulent misrepresentation would require a demonstration that the defendant violated federal regulations promulgated under Black Lung Benefits Act ("BLBA"):

> Not one element of Plaintiffs' claims requires resolution of this, or any other, federal question. A court may well turn to the issue of compliance with the BLBA's provisions as a proxy or indicator of whether Jackson Kelly perpetrated a fraud as alleged, but nothing in the laws of West Virginia requires illegal conduct to satisfy the elements of common law fraudulent misrepresentation. Even if Jackson Kelly's conduct fully complied with all applicable BLBA standards, Plaintiff's could still establish every element of their fraud claims; conversely, if Jackson Kelly failed to comply with BLBA standards, Plaintiffs would not automatically establish fraudulent misrepresentation under West Virginia law.

*Id*.

Defendants next assert that whether DTI acted in concert with DFS raises a substantial federal question because federal law governs their relationship. [Doc. 30 at 9]. It is simply not enough that a federal regulation applies to such conduct. "For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." *Grable*, 545 U.S. at 318. Additionally, defendants again fail to establish how this "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314.

Similarly, defendants argue that the plaintiffs' aiding-and-abetting claim necessarily requires the resolution of substantial questions of federal law. [Doc. 30 at p. 10]. Again, defendants rely on their assertion that because FERC regulations govern the relationship

between DTI and DFS, "a substantial question of federal law [] must be resolved to adjudicate" the claim. (Id.). This Court fails to appreciate how the plaintiffs would be required to establish the violation of a federal regulation to prove any elements of their claims. Rather, these claims appear to hinge on the parties' contracts, which appear to arise under state law. Even if a question hypothetically arose which implicated a federal regulation, again, defendants fail to establish how this "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." **Grable**, 545 U.S. at 314.

Defendants raise the same argument regarding the claims alleging an improper relationship between DFS and DTI; *i.e.*, fraud, conspiracy, and negligence. For the same reasons, this Court finds FERC regulation of that relationship does not confer federal-question jurisdiction. *See e.g.,* **Taylor v. Lewis**, 2011 WL 743747, *3-4 (E.D. Mo. Feb. 23, 2011) (no "arising under" jurisdiction despite reliance upon federal Housing Quality Standards to support state negligence claim); **Tropio v. Dixieline Builders Fund Control, Inc.**, 2009 WL 1549574, *2 (S.D. Ca. June 1, 2009) (no "arising under" jurisdiction despite reliance upon Federal Reserve Regulation Q to support state unfair competition claim); **Bolden v. KB Home**, 618 F.Supp.2d 1196, 1206 (C.D. Ca. 2008) (no "arising under" jurisdiction despite reliance upon federal Uniform Standards and Professional Appraisal Practice to support state unfair competition claim).

Defendants also claim the alleged unfairness in the terms of plaintiffs' contracts, specifically the ten-year term and the fixed-price aspect, involve substantial questions of

federal law "[b]ecause such claims have the effect of challenging the reasonableness" of the same terms in the FERC-approved contracts between DTI and DFS. (Id. at 13). In support, the defendants cite to **Bryan v. BellSouth Comms., Inc.**, 377 F.3d 424, 429 (4th Cir. 2004), in which the Court held that any claim "that seeks to alter the terms of the relationship between carrier and consumer set forth in a [contract] filed [with a federal administrative agency] presents a federal question." In that case, the Court's holding hinged on the fact that, specific to that case, "'an award of damages . . . would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers.'" *Id*. at 429 (quoting **Hill v. BellSouth Telecomms., Inc.**, 364 F.3d 1308, 1316 (11th Cir. 2004)). In this case, the damages sought do not implicate the filed rate. And while not dispositive, it is worth noting that the First Amended Complaint does not make any mention of FERC, the NGA, or FERC-approved rates.

The Supreme Court in **Grable** queried: "does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" Upon careful consideration of the plaintiffs' several state-law claims, this Court must answer in the negative. Indeed, it would appear to be a "small and special category" of cases where state law creates a plaintiff's claim, but federal jurisdiction is nonetheless proper. **Empire Healthchoice Assurance, Inc. v. McVeigh**, 547 U.S. at 699.

## Conclusion

Based upon the foregoing, this Court finds that the defendants have failed to

overcome their burden to demonstrate this Court's jurisdiction over this matter. Accordingly, this Court hereby **GRANTS** the Plaintiffs' Motion to Remand **[Doc. 9]**. As such, this matter is hereby **REMANDED** to the Circuit Court of Marshall County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein and to the Clerk of the Circuit Court of Marshall County, West Virginia.

**DATED:** February 2, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE